## THE TOWN OF LEBANON *versus* MILLS OLCOTT.

When the legislature authorizes an act, which in its natural consequences may be injurious to the property of another, and prescribes the method in which such damages are to be ascertained, he who does the act is not liable as a wrong doer.

And if the legislature in such case provide no specifick remedy to enforce the payment of the damages when ascertained, debt lies.

How the charters of corporations are to be construed.

THIS was an action of trespass on the case, against the defendant, for building a dam across *Connecticut river*, at a place called the lower bar of *White river falls ;* by means of which a certain ancient publick highway near said falls, which the said town of *Lebanon* was by law bound to keep in repair, was overflowed and rendered impassable, and the town compelled to make a new highway at an expense of 650 dollars.

The cause was submitted to the decision of the court upon a statement of the case, in which all the facts alleged in the declaration were admitted by the defendant.   It was also agreed that in June, 1807, the legislature, by an act entitled "An act granting to *Mills Olcott* the privilege of locking *White river falls*," made the said *Olcott* and his associates a corporation by the name of " The White river falls Company," and granted them the exclusive privilege of locking the said falls, in which act it is provided, " That " if at any time the said *Mills Olcott* and his associates " shall find it necessary to make use of the lands of private " persons in the prosecution of said object, for placing locks, " digging canals, or for roads, towing paths, or for any other " purpose, necessary for the full enjoyment of the privilege " aforesaid, and shall make application to the selectmen of " the town in which such land lies, to lay out the same, the " said selectmen are hereby authorized to lay out and set off " the same accordingly ; and the same mode shall be pursued " in determining the damages so sustained by the owner or " owners of such lands as is provided by law in case of lay- " ing out and opening highways, which damages the said " proprietors, before taking possession of the lands so set off, " shall pay or tender to the owner or owners thereof ; and " after such payment or tender as aforesaid, the said

" proprietors shall be invested with the title to such lands.
" And if the town where such lands lie is interested in
" the decision in such case, the selectmen in any adjoining
" town are hereby authorized to lay out and set off said
" lands. And the same mode shall also be pursued in as-
" certaining any damages which may accrue either to indi-
" viduals or corporations by reason of flowing either lands
" or roads, in consequence of any dam which it may be ne-
" cessary to make." It is also enacted in the sixth section of
the act, " that the road leading by said falls from the land-
" ing place above to the landing place below said falls at
" *Phelps'* bar, so called, shall not in any wise be obstructed
" by said company, but that full liberty shall be left to every
" person to cart and team on said road."

The publick highway which the plaintiffs allege to have
been overflowed is the great road running north and south
through the town of *Lebanon*, near the east bank of *Con-
necticut river*. The road mentioned in the act as leading by
the falls, from the landing place above to the landing place
below, runs from the landing place above the falls easterly
to the great road, thence down the great road about a mile,
and thence westerly to the landing place below the falls.
The roads leading from the great road to the landing places
are upon high ground, and are not liable at any time to be
overflowed, and have hitherto been used exclusively for the
purpose of transporting lumber, &c. round the falls. The
part of the great road which has been overflowed lies be-
tween the places where the roads from the landing places
meet the great road, and was, before the dam was built, very
low intervale land, and was subject to be, and occasionally
was, overflowed by high freshets in the spring season. And
a dam sufficient to answer the purpose intended by the act
could not have been built without causing the overflowing
alleged in the declaration.

It was also agreed by the parties that long before the
commencement of this action, in May, 1809, application was
made by the plaintiffs to the selectmen of *Plainfield*, a

town adjoining *Lebanon*, to determine the damages sustained by said town of *Lebanon* by reason of the overflowing of which they now complain, and that said selectmen, on the 3d of June, 1809, having heard the parties, assessed the same damages at 240 dollars; but the said *White river falls* company have never paid, or tendered to the plaintiffs said sum of 240 dollars, nor any part of it.

*Gilbert* for the plaintiffs.

*J. Smith* for the defendant.

On behalf of the defendant it was contended, that the dam having been made in pursuance of an authority given for that purpose by the legislature, the act of making it could not be considered as a tort, for which the defendant was liable in an action at common law; and that as the legislature had prescribed the mode in which the damages any town might sustain by having its roads overflowed were to be ascertained, towns must be confined to the remedy prescribed, and of course this action could not be maintained(1).

On the part of the plaintiffs it was contended,

1. That the sixth section of the act of incorporation having declared that the road leading by the falls should be in no wise obstructed by the company, they were thereby restrained from building such a dam as might cause that road to be overflowed; of course the injury of which the plaintiffs now complain arose from an act of the defendant not authorized by the legislature; and therefore the defendant was liable at common law.

2. It was said that, admitting the act of incorporation to have given the company a right to overflow the road in question, still it was evident from the language of the act that the right was granted only upon condition that the damages should be first ascertained and paid; that the company most clearly could have no title to land set off to them under the act for the purposes of the incorporation until the damages were paid, and that the right to overflow lands and roads was placed upon the same footing; and as the company

(1) 11 *Mass.
R.* 364, *Stowell* vs. *Flagg.*
—12 *Mass. R.*
466, *Stevens*
vs. *The Middlesex Canal.*
—2 *Johnson,*
283, *Steele* vs.
*The Company
of the Western Inland
Lock Navigation.*

had not in this case first complied with the condition, the act of the defendant in building the dam must be considered as altogether unauthorized, and a tort, for which he was liable in this action.

3. It was contended, that, if the right to overflow lands and roads was to be considered as granted absolutely, and not upon condition that the damages should be first paid, then no remedy was provided by the act to recover the damages when ascertained, for the selectmen who were to assess them had no authority to issue execution ; the act, therefore, upon this construction, provides no remedy in fact ; of course parties injured must be left to their remedies at common law.

The opinion of the court was delivered by

RICHARDSON, C. J.　When the legislature authorizes an act, which in its natural consequences may be injurious to the property of another, and at the same time prescribes the particular mode in which the damages resulting from the act shall be ascertained and compensated, it is clear that he who does the act cannot be liable as a wrong doer. The truth of this proposition is not denied by the plaintiff's counsel ; but he contends that the damages which the plaintiffs have sustained resulted from an act of the defendant not authorized by the legislature. It is said that the company were clearly restrained from overflowing the road in question, by the sixth section of the act of incorporation, which expressly declares that " the road leading by the falls" shall be in no wise obstructed by the company ; and it is agreed that the highway overflowed in this case is a part of the highway leading by the falls. This argument is certainly entitled to a very serious consideration, and must in our opinion prevail, if the overflowing in question is to be considered as an obstruction within the meaning of the act.

But in ascertaining the meaning of a charter of this description, all the parts of it ought to be taken together, and be so contrued, if possible, as to make them consistent one with another. Such a construction ought also to be adopted

that no part of the charter may be inoperative—in a particular manner that the object of the grant may not be defeated. And in this case it is to be presumed that the charter was granted with a full knowledge of the situation of the place where the dams and locks were to be made, and of the situation of the lands and roads in the vicinity, and that its provisions were intended to be adapted to the situation and circumstances of the place. In giving a construction, therefore, to the charter, the situation and circumstances of the place ought to be taken into consideration. It is very clear that this construction of the plaintiffs not only renders the sixth section of the charter inconsistent with other parts of it, but must in effect defeat the object of the charter altogether; for it is agreed that a dam sufficient to answer the purpose intended by the act could not have been built without causing the overflowing in question. This construction ought not then to be adopted, if the whole act taken together admits of an interpretation that will render all parts of it consistent and inoperative, without in any wise defeating the object which the legislature must have had in view in the sixth section; and we are of opinion that it does admit of such an interpretation. The object of the sixth section of the act is very apparent. The charter gives to the company the exclusive privilege of locking the falls, and authorizes them to receive toll of those who may pass the locks. But it was not intended to give them the exclusive privilege of transporting all goods by the falls, but to leave it at the election of those who might have occasion to pass the falls with goods, to go through the locks with them, or transport them round the falls by land, as formerly. This section was therefore introduced to secure that election to those who might have occasion to use the river for the transportation of goods, by restraining the company from obstructing the old highway round the falls. It is equally clear that it was not the intention of the legislature that the company should obstruct any highway whatever by overflowing it. This is evident from the provision of the charter which makes the

company liable to towns for all damages they may sustain by having their roads overflowed. The only damages a town as such can sustain in such a case must arise from its being compelled to repair the road and make it passable. The charter does not, then, by implication exonerate towns from their liability to keep the roads overflowed in repair. But they are still bound to make them passable wherever they may be overflowed, and are to look to the company for the reimbursement of the expense.

The overflowing of the road in question must, therefore, be considered only as a temporary obstruction, which could not be avoided in accomplishing the object of the charter, and which has been entirely removed by an alteration in the road, so that the passage round the falls is as convenient as before. As the legislature must, in our opinion, be presumed to have been aware that this road would be overflowed, and have provided the means by which any obstruction arising from such overflowing might be removed at the expense of the company, we think this is not to be viewed as an obstruction within the meaning of the sixth section of the charter, which was introduced only for the purpose of preventing unnecessary and permanent obstructions of the roads round the falls. This construction is absolutely necessary to make that section consistent with other provisions in the charter, and seems to us to be warranted by the best rules of interpretation. We are, therefore, of opinion that this objection to the defence in this case cannot prevail.

It is also contended by the plaintiffs, that the company had no right under the charter to construct dams until the damages which might result from them in overflowing lands and roads were first ascertained and paid. But in our opinion this construction is equally against the interest of the individuals and towns whose lands and roads are liable to be overflowed, and that of the company; nor is it by any means warranted by the language of the charter. The act provides that in case the company shall find it necessary to use the lands of private persons, such lands shall be set off

and the damages appraised in a particular manner; and that the company shall not take possession of the land until they have paid or tendered the damages so assessed. By this provision the company were enabled to acquire a title to lands set off by metes and bounds, the real value of which could be easily ascertained; and there would be no inconvenience in withholding the title from the company until the value of the lands was paid or tendered. But as to consequential damages to be done to individuals and towns by constructing dams upon the falls, the case was very different. Until it was ascertained by experiment to what extent it would be necessary to erect dams, to accomplish the object, and to what extent such dams would cause the water to overflow roads and lands, there could have been no certain data by which such damages could have been ascertained. Any opinion of the selectmen on the subject must have been at best only vague and uncertain conjecture, equally unsafe to all parties as a ground of decision. The provision of the charter, therefore, relative to the payment of the damages previous to the taking of possession of lands set off to the company, is not, in the nature of things, applicable to the case of consequential damages. The charter provides that the damages shall be *ascertained* in the same manner, that is, by selectmen, in both cases; but neither the letter nor spirit of the act will warrant us in applying the other provisions relative to land to the case of damages resulting consequentially from the construction of dams. We are, therefore, of opinion that this objection of the plaintiffs is not well founded.

The plaintiffs also contend that the charter provides no method to compel the company to pay the damages, when assessed in a case of this kind; and that, therefore, unless they can sustain an action at common law, they are without remedy. This is undoubtedly true. But the answer to this objection is, that the plaintiffs may maintain an action at common law against the company to enforce the payment of the damages found by the selectmen, but not an action of

Lebanon
*vs.*
Olcott.

trespass on the case against this defendant. What he has done was warranted by an act of the legislature, and is not to be viewed as a tort. But the determination of the selectmen creates a debt, the payment of which may be enforced

(2) 7 *Mass. R.* 202, *Bigelow* vs. *Cam. & Con. Turnp. Corporation.*

in an action of debt at common law(2.)

It is the opinion of the court that there must be

*Judgment for the defendant.*