DEARBORN *v.* THE BOSTON, CONCORD AND MONTREAL RAILROAD.

The damages sustained by the owners of lands over which a railroad may pass, whether assessed by the commissioners or by the jury on appeal, are to be all such as may fairly result to the land owner by the building of the road in a suitable and proper manner, not only on account of the land actually taken, but on account of the injuries to his other lands and property, and the inconveniences to which he is subjected.

A jury must assess the damages as of the time when the commissioners passed upon the subject; but if, after appeal, the road be made before trial, the jury may view the premises for the purpose of forming their opinion as to the proper assessment to be made for damages sustained. And as the corporation is liable in this proceeding for such damages only as may arise from making the road in a suitable and proper manner, the jury may judge whether the road is suitably made, and what damages are proper for the corporation to pay for a road suitably made in that place.

Where a part of the appellant's land was liable to be washed and to cave off where there was a bank, and the sand drifted from the road to the injury of his adjoining land, and the court instructed the jury that if these effects resulted unavoidably from the building of the railroad in a suitable and proper manner, then damage was to be allowed, but if caused by building the road improperly it was not to be allowed—*Held,* that the evidence was admissible and the instructions correct.

Section 12, chapter 188, of the Revised Statutes, provides that members of public corporations shall be competent witnesses in cases affecting the interests of such corporations; and the act of December 25th, 1844, sec. 3, provides that all railroad corporations which shall be unable to purchase the lands for their roads of the owners on the respective routes, at rates to be agreed upon, shall be public corporations. *Held,* that railroad corporations were not such public corporations, within the meaning of the Revised Statutes, that the stockholders could be witnesses for the corporations.

The preliminary question, whether a witness is interested or not, is usually decided by the court. But the court may, in their discretion, submit the question to the jury.

APPEAL from the award made by the railroad commissioners and the road commissioners of this county, for the damages sustained by the appellant by reason of the laying out of the railroad across his land.

The plaintiff introduced evidence tending to show that in consequence of the building of the railroad, a part of his land was liable to be washed, and to cave off where there was a bank;

and that the sand drifted from the railroad and injured his adjoining land. This evidence was objected to, but admitted, and the court instructed the jury that if these effects resulted unvoidably from the building of the railroad in a suitable and proper manner, the damage was to be allowed, but if they were caused by building the road improperly, it was not to be allowed. To these instructions the defendants excepted. The jury had a view of the premises.

A witness was introduced by the appellees, who testified, on examination by the appellant, that he was not a stockholder of the railroad corporation ; that he had ceased to be so since the sitting of the court ; that he had sold his stock to the president of the corporation for the price of one hundred dollars a share, and had taken the buyer's obligation to deliver to him four shares of stock in said railroad at par, or one hundred dollars in money, at the choice of the obligor ; that his object in selling was to be a witness in this case ; that he supposed the present market value of the stock to be fifty-five or fifty-six dollars a share, and he expected to be paid in stock, if he called before the stock rose to par.

At the instance of the appellant, the court decided to submit the evidence tending to shew the witness interested, to the jury, and the evidence was received, subject to their decision. To this course of deciding the interest of the witness the defendants excepted.

The jury returned a verdict for the plaintiff, which the defendants moved to set aside, by reason of said rulings and the exceptions thereto.

The case of Mary F. Rogers against the railroad, and of William Gould against the same, embrace substantially the same facts as stated in the above case. They were tried at the same time, and all argued as one case, and the decision made in this case applies to the three.

*Quincy,* for the defendants. The court ruled, in substance, that if from the construction of the railroad in a proper manner

Dearborn v. The Boston, Concord and Montreal Railroad.

the several kinds of damages complained of necessarily occurred, the petitioner was entitled to recover for them in this proceeding, but the court also added, what must have been understood by the jury as part of the rule as to damages, that if the damages were caused by building the road improperly, they were the subject of another action.

This charge and ruling the defendants contend was erroneous, because it did not clearly recognize and enforce the distinction between what were the necessary damages and what were merely the possible damages occasioned by the acts of the defendants.

As this case is an appeal from the award of damages made by the commissioners, the question of damages should, of course, be determined by the same rule which should have governed that board. If the appellant succeeds in obtaining an increased assessment of damages, he will be entitled to costs.

The commissioners could take into consideration only the necessary consequences of the defendants taking the land for their road, and not any natural consequences which did not necessarily result from so taking it. The commissioners could not base their award upon damages which might, according to natural laws, happen from the construction and use of the road, but of which there might be a very remote probability; or in other words, upon merely possible damages. Their assessment of damages is to precede the making of the road. Act of December 25th, 1844, section 5.

Such injuries might arise from the cars being thrown from the track when encumbered with snow, or some other natural cause, or from the materials of the road being washed away and left on adjacent lands by floods.

The rule of law suggested in regard to damages, is that which is applied to the assessment of damages happening by the tortious acts of a defendant, and a more rigid and severe rule should not be applied to the case of a party acting under the authority of law. Such would have been the rule if the defendants had constructed their road across the complainant's land without right

and as mere trespassers. 2 Greenl. Ev., § 254; *Loker* v. *Damon*, 17 Pick. 284.

In the charge and rulings of the court this distinction was disregarded, at least in respect to the damages occasioned by the sand blown and washed from the railroad; which, though natural and actual, were not necessary results of its construction, and which could not, therefore, have been regarded by the commissioners in making their award.

The true question was not, as left to the jury, whether these injuries actually happened—the road having been properly constructed—but whether they were damages which must have necessarily happened from its construction.

Upon the principles adopted by the court, all possible natural consequences of the defendant's acts should be considered in the assessment of damages; and if such be the true rule, the land owner should be permitted to go into proof of such possible damages of whatever kind, and whether they have or have not actually happened. We submit to the court that this ruling cannot be sustained, either upon principle or analogy.

II. It was the duty of the railroad company so to construct their road as to guard against the injuries stated by the washing and blowing of its materials upon the lands of individuals. And it should not have been left to the jury to find that a road which did not secure the owners of such lands against these injuries was properly constructed. It is obvious that a railroad can, without extraordinary difficulty, be so constructed as to prevent such injurious results, and that a road which does not provide against them, is not properly constructed. They should, as we conceive, have been directed, that a railroad was not properly constructed which was so built that such injurious consequences would follow. The plaintiff should have been left to adopt such other remedy as the law has provided for an injury arising from the faulty construction of the road.

III. There is no mode of determining whether all the injuries complained of were or were not included in the assessment of damages, as the record does not show upon what ground the

jury acted in making the assessment.    The defendants have there-fore no protection against being twice subjected to the payment of damages for the same injuries.

IV. The question whether the road was properly built or not, cannot in this process be submitted to the jury. They should assess the damages upon the assumption that the road was prop-erly constructed ; otherwise the distinction between the party's remedy by action for injuries sustained, and his remedy by ap-peal from the award of commissioners, will be confounded.

V. The court erred in submitting to the jury the question in regard to the interest of the witness. We say further, that the witness was competent, independent of selling out his stock.    A copy of the record of the vote of the corporation, adopting the act of 1844, has been duly filed, and we desire this point to be particularly examined, as important to railroads. We refer the court to Rev. Stat., chap. 188, § 12; Pamphlet Laws, chap. 128, § 3, and to chapter 709, Pamphlet Laws.

*Perley*, with whom was *W. C. Thompson*, for the appellant. Railroads are empowered by the statute to take land against the consent of the owner, for the purpose of constructing, maintain-ing and using their road ; and the commissioners appraise the damages which the land owner is to receive as compensation for that right.    The railroad have a right to build, maintain and use their road in a reasonable and usual manner. They would not be bound to incur great and disproportionate expense to relieve the land owner from damage and inconvenience comparatively trifling.    If the road is constructed and maintained in a reasona-ble and proper manner, looking to all the circumstances of the road and the land owner, the land owner can claim no dam-age for what follows as the natural or necessary consequence, because the railroad, under the law, have acquired the right so to build and maintain their road, and the land owner has been paid for it.    The commissioners, in estimating the damage, consider what would be the proper construction of the road, and give the owner all the damage he would suffer from constructing and

maintaining it in that manner. The jury would be bound by the same rule.

But the jury in this case had an advantage over the commissioners, who would only anticipate the effect of the road. The jury saw it, and the court allowed this evidence of the actual effect of the road to guide in estimating the damage to be given for taking the right to use it in that way. No damage was given or could be for the. actual injury the petitioner has sustained since the laying out. The damage is given for taking the right. What will the effect of the laying out be ? was the inquiry with the commissioners. The jury have been permitted to know the actual operation of the road, the better to understand the amount of damage that has been sustained by the laying out of the road.

If the railroad have kept within the limits of their right, and performed their duty, no action can be maintained. *Lebanon* v. *Olcott,* 1 N. H. Rep. 339 ; *Stevens* v. *Middlesex Canal,* 12 Mass. Rep. 466 ; *Dodge* v. *Commissioners of Essex,* 3 Met. Rep. 281 ; *Calking* v. *Baldwin,* 4 Wendell's Rep. 666 ; *Burroughs* v. *R. R.,* 15 Conn. Rep. 324.

The distinction attempted to be set up between natural and necessary consequences is incapable of practical application, and is not warranted by the authorities cited. Supposing the road to have been properly constructed, the washing down of the sand from the embankment, the blowing of sand from it, are the necessary as well as natural consequences of the legal exercise of the right which the railroad obtain and pay for.

The objection that in a future action it could not be known from the record for what the damages had been given by the jury, is not applicable. Nothing is sought to be recovered for any particular instance of damage, but the question is, what compensation shall be paid for the right. Besides, how does the finding of the jury increase that difficulty ? It is as easy to tell what the jury considered, as what the commissioners considered. They both appraise the same thing, on the same principle.

Dearborn *v.* The Boston, Concord and Montreal Railroad.

EASTMAN, J.* By the act of December 25th, 1844, the railroad commissioners, in conjunction with the road commissioners for the county where the lands taken for any railroad should lie, are required to assess the damages sustained by the owners of lands in the same way and manner as road commissioners in the several counties were by law required to do. Pamphlet Laws, chap. 128, § 5.

By the Revised Statutes, road commissioners are required to assess the damages sustained by owners of land, as selectmen are required to do. Rev. Stat., chap. 51, § 7. And by chap. 49, § 13, of the Revised Statutes, it is provided that "selectmen shall assess the damages sustained by each owner of the land required for the highway."

The act of June 23d, 1848, Pamphlet Laws, chap. 621, changes the law only so far as to provide that the railroad commissioners, in conjunction with the selectmen of the towns wherein the land lies, shall assess the damages instead of the county commissioners.

The right of appeal and trial by jury, in cases of lands taken for railroad purposes, is given by the fifth section of the act of December, 1844, in the same manner as it is given in cases of lands taken for highways by the eighth section of chapter 51 of the Revised Statutes. After appeal, the jury are to assess the damages sustained by the land owner, instead of the road commissioners and the other officers in conjunction with them.

The damages, then, which are to be found by a jury on the trial of a case like the one before us, are to be the same which selectmen would assess in a case of taking land for a highway. What such damages shall be, is not specifically pointed out, either by statute or by any reported case from our courts. Still they are believed to be generally pretty well understood through the community. As the lands are taken for the public use and convenience, individuals must be fully reïmbursed, not only for the actual value of the land taken, but for all the "damages sustained"

* Perley, J. having been of counsel, did not sit.

by reason of taking it. A highway may pass through a piece of waste or common land, far removed from any settlement, and of very little value to any one. Or it may go directly through a small, highly cultivated field, which is the chief reliance of the owner for his support. It may pass over a valuable garden, or through an orchard of choice fruit. It may cut off entirely all the water in a large pasture. It may inconveniently separate an individual's out-buildings from his house, and may pass directly over his well. All these, and numerous other matters may occur, and go to make up " the damages sustained," and should be taken into consideration by the selectmen in awarding damages ; for the owners of lands should have due recompense allowed them. *Pritchard* v. *Atkinson*, 3 N. H. Rep. 335. Highways, when rightfully laid out, are to be considered as purchased by the public of him who owned the soil, and by the purchase the right is acquired of doing everything with the soil over which the passage goes, which may render it safe and convenient ; and he who sells may claim damages, not only on account of the value of the land taken, but for the diminution of the value of the adjoining lots, calculating upon the future probable reduction or elevation of a street or road ; and all this is a proper subject for the inquiry of those who are authorized to lay out, or for a jury when brought before them. *Callender* v. *Marsh*, 1 Pick. Rep. 432, per *Parker, C. J.*

He whose land is taken for a railroad is to be equally protected. He is to receive all that equity and justice require, when the nature and extent of the property and rights to be affected, are considered. The corporation acquire the right to construct their road in any suitable and proper manner, for their own convenience and the public accommodation, and the right to vary and change that construction, within the established limits of the road, from time to time, forever, until the State resume the right and privilege of the corporation, or until the charter be altered, repealed or annulled. Accordingly, the commissioners or jury should take into consideration and appraise all damages, direct and consequential, present and prospective, certain and con-

tingent, which may be judged by them fairly to result to the land owner by the loss of his property and rights, and the injuries done thereto. All the language of the general railroad act of December, 1844, shows this to be the case. And such we understand to be the doctrine in Pennsylvania. *Pennsylvania Rail Road* v. *Heister, McClure and Reiley*, 8 Barr's Rep. 445. And for any loss or injury which results from building the road in a suitable and proper manner, the land owner can maintain no action against the company ; the whole matter is concluded by the award of the commissioners or the verdict of the jury on appeal ; for where the legislature authorizes an act, the necessary consequence of which is to damage the property of another, and at the same time prescribes the particular mode in which the damage shall be ascertained and compensated, he who does the act cannot be liable as a wrong doer. *Woods* v. *The Nashua Man. Co.*, 4 N. H. Rep. 527 ; *Lebanon* v. *Olcott*, 1 N. H. Rep. 339 ; *Stevens* v. *Middlesex Canal*, 12 Mass. Rep. 466 ; *Wolcott Woolen Manf. Co.* v. *Upham*, 5 Pick. Rep. 292.

The damages awarded by the commissioners must be regarded as a full compensation for all the injury which the land owner may sustain, then or at any future time, from any cause which the commissioners were bound, or had a right to consider ; so that it can never afterwards be made a question whether, in fact, the commissioners have or have not considered any particular cause of damage legitimate for their consideration. It must be taken that they have done their duty in considering all such causes, and that the party who has acquiesced in their decision, without appeal, is satisfied that they have done so. Or in case of a submission to a jury, it must be understood that they have been governed by the same principles.

But in granting the power to the railroad to take the land and make the road, no authority is given to make it in an unsuitable and improper manner ; and hence the corporation must remain liable for all such damages as result from an improper and unsuitable construction. It will at times, perhaps, be a difficult matter to decide whether the road is built in a suitable manner

or not, but of this the proper tribunal must judge; nor do we see that the question presents more difficulties than are frequently attendant upon other kinds of litigation.

Ordinarily the damages are settled either by the commissioners or the jury before the road is built; and they are decided upon the assumption that the road will be made in a suitable and proper manner; but in this case, before the trial was had, the road was made and the jury had a view of the premises. And when a road has already been built, the jury must necessarily decide whether it has been done in a proper and suitable manner or not.

Upon the principles which we have endeavored to state as governing proceedings of this kind, we can discover no error in the instructions given to the jury. The corporation was liable for the damages sustained by reason of building the road in a suitable and proper manner, and instead of anticipating the manner in which it would be built, as is usually the case, the jury had the advantage of examining for themselves, and seeing the actual operation and effect it had upon the appellant's property. And although the damages were to be assessed as of the day when the commissioners made their appraisal, yet the jury were the better enabled to do it by the light which they had, than they would have been before the road was made. In the one case they settle the matter from a supposed state of facts, and in the other from actual facts before them, of which they are the proper judges.

This question has heretofore been before this court, in Rockingham county, in the case of *March* v. *The Portsmouth and Concord Rail Road,* and it is understood that the instructions given to the jury in the present case were precisely the same as those given in that action, and which were held to be correct.

But there is still another question raised in this case, and that is, whether a stockholder of a railroad corporation which has adopted the act of December, 1844, rendering railroad corporations public in certain cases, is a competent witness for the corporation, independent of selling out his stock.

Dearborn *v.* The Boston, Concord and Montreal Railroad.

By the Revised Statutes, chap. 188, § 12, it is enacted, that inhabitants of towns, and members of public corporations, and members of mutual insurance corporations, shall be competent witnesses, in cases affecting the interests of such corporations. This act took effect in March, 1843. By the act of December 25th, 1844, chap. 128, § 3, of the Pamphlet Laws, entitled " an act to render railroad corporations public in certain cases," it is provided, that all railroad corporations which now are or shall hereafter be chartered by the authority of this State, and which shall be unable to purchase the lands for their roads of the owners on their respective routes, at rates to be agreed upon by the parties, are hereby made and declared to be public corporations. To this section is attached a proviso ; and the section is then amended by the act of December 29th, 1848, chap. 709, Pamphlet Laws, requiring a copy of the record of the vote of the corporation adopting the act of 1844 to be filed in the office of the Secretary of State. This copy, it is admitted, was filed according to law, so that the question presented is, whether by virtue of the provisions of these several statutes a stockholder of the railroad can be a competent witness for the road.

In order to constitute a stockholder a legal witness for the corporation, we must hold that a railroad is a public corporation within the meaning and intent of that section of the Revised Statutes which we have quoted.

At the time of the passage of the Revised Statutes, the general understanding of the meaning of a public corporation, as recognized by our reports, was one which was created for public purposes and for those only ; and all of whose franchises were exercised for public purposes, and whose property belonged to the public ; such as counties, towns, parishes, and school districts. Individuals had no private interest in them, such as could be released or conveyed to another. Private corporations were those which were created for the immediate benefit and advantage of individuals. Each stockholder in them had an interest that could be bought and sold, and which could be seized on execution. Canals, turnpike roads and bridges, banks and

manufacturing companies were of this character. *Dartmouth College* v. *Woodward*, 1 N. H. Rep. 116; *Eustis* v. *Parker*, 1 N. H. Rep. 273; *School District* v. *Blaisdell*, 6 N. H. Rep. 197.

Under these decisions, railroad corporations, at the time of the passage of the Revised Statutes, would no doubt have been held to be private corporations, and their stockholders incompetent witnesses for the corporations. But by the act of 1844, railroad companies have, under certain circumstances, been declared to be public corporations. The chief design of that act, however, was not to take away the property of the individual stockholders and confer it upon the public, and make the road belong to the public, but to obviate the constitutional objection against taking private property for private purposes; and it appears to us quite clear that the act cannot have the effect to make railroad companies public in their character to the extent contemplated by the Revised Statutes, so as legitimately to fall within the meaning of public corporations, as there intended. Their property and franchises are capable of sale, and transfer, and attachment; and they are as much private corporations, so far as the interests of the stockholders are concerned, as turnpike roads. The act of 1844 gives a signification to the term "public corporation," which did not exist at the time of the passage of the Revised Statutes; and we think the term as used in the Revised Statutes cannot be made to apply to railroad corporations. Stockholders, then, are not competent witnesses for the corporations.

In determining the question of the interest of a witness, the usual practice is for the court to decide the matter before proceeding to the examination of the witness upon the merits. But the court have the power in their discretion, in a doubtful case, to submit the question of interest to the jury.

*Judgment on the verdict.*