## BRIGGS' PETITION.

Poverty and inability to pay taxes is a good cause for selectmen of towns to abate them.

The court of common pleas has power, in cases properly brought before them, to abate taxes for any cause which would justify an abatement by selectmen.

This is a petition for an abatement of taxes. It is dated April 24, 1852, and asks the court of common pleas to make such order as justice may require.

It appeared that the firm, consisting of James Briggs and John Andrew, having complied with the requirements of section 4 of chapter 41 of the Revised Statutes, by furnishing to the selectmen, in due season, an account of their taxable property, were duly assessed by the selectmen of Holderness, for the year 1851, $79,82 for State, county, town and school tax, and $2,61 for school-house tax. In October, 1851, the firm failed, and all its property, and that of each partner, not exempted by law, was attached upon actual debts much exceeding the whole value of the property, and since that time neither partner has had any means of paying the taxes. March 31, 1852, the collector gave the firm written notice of the taxes, but therein stated the school house tax to be $2,74, and the return upon the warrant corresponds with said notice; and no part of the taxes having

been paid, on the 19th of April, 1852, he arrested James Briggs, and committed him to jail. April 23d, 1852, the petitioners applied to the selectmen to abate the taxes, but their application was refused.

The court of common pleas ruled that inasmuch as the taxes were wholly just, and in no respect excessive or illegal, this court could not properly afford any relief. To this ruling the petitioners excepted, and the question was transferred to this court.

*Burrows*, for the petitioners.

The court of common pleas refused to grant the prayer of this petition, on the ground that the Revised Statutes give said court no power to abate taxes, or afford relief for the cause of poverty and inability to pay.

It is provided by the Revised Statutes that " the selectmen, for good cause shown, may abate any tax assessed by them or their predecessors." ch. 44, § 1. And the petitioners contend that poverty and inability to pay the taxes is a good cause for their abatement, and that the same has been considered by the selectmen of the various towns of this State, as a good cause for the abatement of taxes for more than fifty years; that taxes have been abated every year, and in all or nearly all the towns of this State, because the persons taxed were poor and unable to pay them, and that this practice or custom of abating taxes, for the cause of poverty or inability to pay, has become too general and of too long standing to be denied or taken away without positive enactment, and that no such enactment exists.

The Revised Statutes further provide that " if the selectmen neglect or refuse to abate any tax, any person, conceiving himself aggrieved, having first complied with the provisions contained in section 4 of chapter 41 of this title, may, within nine months after notice of such tax, and not afterwards, apply by petition to the court of common pleas

in the same county, who shall make such order thereon as justice may require." Rev. Stat. ch. 44, § 2.

We contend that this is a new provision of the statute, and unlike the statute of 1791 and 1792, where the powers of the court are somewhat limited. N. H. Laws, (ed. 1815,) 259, § 3, 5.

But there is a still wider difference between the statute now in force and the statute of 1827, (N. H. Laws, ed. 1830, 559, § 14.) In the latter statute the proviso is that the court shall not have the power to abate, except as to such articles and matters as the selectmen, having the power to value, have in the judgment of the court overvalued, and also as to doomage, &c.

Now, we contend that the Legislature, with a full knowledge of the long and universal practice of selectmen to abate taxes for the cause of poverty, when they enacted section 2 of chapter 44 of the Revised Statutes, meant to do away the proviso in the statute of 1827, above cited, and to give the court of common pleas a power equal in extent to that of the selectmen, to be exercised in their discretion. And this construction, we think, is fully warranted by the words of the statute. The words are, if the selectmen neglect or refuse, &c. Neglect or refuse to do what? Obviously to abate the tax, for good cause. What is good cause? The selectmen, by a very long and general practice, have said that poverty is good cause. It is, then, good cause with them.

It is believed it cannot be denied that, in the absence of any restrictive provision of the statute creating an appellate court, such court is clothed with all the powers of the tribunal appealed from. This petition is in the nature of an appeal. But the court of common pleas have, in effect, ruled that they have not the same extent of powers to abate the taxes, or afford relief to the petitioners, which the selectmen have. This ruling we conceive to be wrong, and should be amended.

*Bellows,* for the petitioners.

BELL, J.   The taxes in question in this case are admitted to be rightfully assessed, and the petitioners are by law liable to pay them.   The single question presented by the case is, whether inability to pay the tax, from the loss of property subsequently to its assessment, is a cause for abating the tax, or, in other words, whether justice requires that the court of common pleas should order the petitioners to be relieved from the payment of this tax, on the sole ground that they are poor and unable to pay it.   The change made in the law relative to abatements, by the Revised Statutes, is very clearly stated in the case of *Osgood* v. *Blake,* 1 Foster's Rep. 564.   By the law now in force, the court have authority to make such order as justice may require, in relation to the taxes of the applicant, in case he has given to the selectmen a true account of his taxable polls and estate when required, has been refused an abatement by the selectmen, and has applied to the court within nine months after notice of the tax.   These requisites have all been complied with in this case, and there can be no question of the jurisdiction of the court of common pleas to abate this tax, if justice requires it.

Under the statutes of 1791, (N. H. Laws, ed. 1815, 259, cited 2 N. H. Rep. 236, and the statute of 1827, N. H. Laws, ed. 1830, cited in 1 Foster's Rep. 564,) the jurisdiction of the court was limited to a small class of errors in the assessment.   Under the Revised Statutes the authority is unlimited, if the requisites before stated have been complied with.   The language of chapter 44 of the Revised Statutes is thus : " Selectmen, for good cause shown, may abate any tax."   " If they shall neglect or refuse, any person, conceiving himself aggrieved, having first complied with the provisions contained in section 4 of chapter 41 of this title, may, within nine months after notice of such tax, and not afterwards, apply by petition to the court of common pleas

in the same county, who shall make such order thereon as justice may require." After careful consideration, we are entirely unable to perceive any reason for giving to the different phrases, used in these sections to describe the powers of the selectmen and of the court, any different meaning. If justice requires an abatement, that would be good cause for the selectmen to make it. If good cause of abatement is shown, justice requires the court to make it. The selectmen and the court have the same authority, in cases rightfully before the court, and they are to administer it on the same principles. It seems to us clear that any irregularity or illegality in the assessment of a tax, is a good cause for the abatement of it, and that justice requires such abatement to be made. Nothing could be more unjust nor more unwise than to suffer an illegal tax to be collected, and leave the wrong to be settled by a lawsuit. The law gives the power to abate, and if it is not exercised, the omission cannot give validity to an illegal proceeding. The principle that where a statute gives a right, and, at the same time, provides a remedy, that remedy must be pursued, and any other is excluded, is well founded in reason and well settled by authority. *Gedney* v. *Tewkesbury*, 2 Mass. Rep. 309; *Turnpike* v. *Gould*, 6 Mass. Rep. 44; *Stowell* v. *Flagg*, 11 Mass. Rep. 364; *Osborn* v. *Danvers*, 6 Pick. 100; *Lebanon* v. *Olcott*, 1 N. H. Rep. 339; *Manu'g Co.* v. *Woods*, 4 N. H. Rep. 527; but it applies only where the remedy so provided is coëxtensive with the mischief. *Cochran* v. *Walker*, 8 N. H. Rep. 166; *Osgood* v. *Blake*, 1 Foster's Rep. 566; *Troy* v. *Cheshire Railroad*, 3 Foster's Rep. 83. The proceeding provided for the abatement of taxes would, of course, exclude any other remedy for such abatement, if any other existed. But that proceeding furnishes no remedy for a wrongful imprisonment, or a wrongful seizure and sale of property, under color of an illegal tax, and, of course, cannot exclude the ordinary remedy for those wrongs by action.

Illegality and irregularity are by no means the only good

causes for which justice requires that taxes should be abated. In all our towns, as we believe, poverty and misfortune are regarded as good causes for relief, and taxes are constantly abated, and have for a long period past been abated for this cause. The poor man who has lost his health from accident or disease, who has lost his property by fire or other misfortune, or whose poverty requires all his earnings for the support of his family, and to save them from the cold charity of the workhouse, has good cause for an abatement of his taxes, and the sense of justice of selectmen rarely, if ever, allows his application to be refused, and no instance has come within the knowledge of any of us, where the exercise of this power has subjected those officers to censure. More frequently they abate his taxes unasked, for the protection of their town against a contingent claim for his support.

It is fairly to be inferred from decisions of this court, that an omission to tax a person, with a view to prevent his gaining a settlement as a pauper in the town, or, as we think, an abatement of his taxes for the same purpose, is just and proper within the reasonable intention of the Legislature. *Burt* v. *Wakefield*, 4 N. H. Rep. 48; *Henniker* v. *Weare*, 9 N. H. Rep. 573. Selectmen are expressly authorized to make such deductions from the appraised value of the property of insane persons as they think just and reasonable, whenever it shall appear that the income of their estates is not sufficient to support them. Rev. Stat. ch. 42, § 4. The same cause would seem to be sufficient ground for the abatement of the tax. The principle of such legislation is not confined to the single case of the insane. Other misfortunes must furnish equally good cause of abatement.

We think, then, there can be no doubt that poverty and inability to pay are good cause for the selectmen to abate taxes; and there seems to us much force in the suggestion of the counsel for the petitioners, that, in absence of any

restrictive clauses, every appellate tribunal is clothed with all the powers of the tribunal appealed from, and is bound to exercise them upon the same principles. Whatever would be cause for abating taxes by selectmen would, therefore, be equally good cause before the common pleas.

Our impressions are strengthened upon this point by the fact, that no provision is made by our statutes for the relief of a person poor and unable to pay, who is committed to prison for nonpayment of taxes. The poor debtor, committed on execution, the poor convict, committed for nonpayment of fines and costs, may each be discharged from prison by a proper course of proceeding for that purpose. Considering the constant succession of changes of the law, affording more and more exemptions from confinement in jail, it must be held to be the policy of the law here, and, of course, the demand of justice here, that no man should be subjected to perpetual confinement in a jail for the non-payment of money, which the party has no means nor ability to pay. This deficiency could hardly have arisen from any other cause than the understanding of the Legislature, that inability to pay was a good cause for an abatement of taxes, and that in every such case relief could be at once obtained from imprisonment upon application to the selectmen, and, upon their refusal, to the court of common pleas; and unless this construction is adopted, the Legislature of the State must rest under the imputation of subjecting the poor citizen to perpetual imprisonment for nonpayment of taxes.

It is, of course, to be certified to the court of common pleas that this court are of opinion that the courts of common pleas are authorized to abate taxes in cases properly brought before them, upon any ground which would be good cause of abatement by the selectmen, and that poverty and inability to pay is such good cause.