Health Services Planning and Review Board
No. 87-365

## Appeal of New Hampshire Catholic Charities
### (New Hampshire Health Services Planning and Review Board)

August 10, 1988

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*William J. Donovan* on the brief and orally), for the plaintiff.

*Sulloway, Hollis & Soden,* of Concord (*Eleanor H. Holmes* and *Daniel P. Luker* on the brief, and *Ms. Holmes* orally), for the defendants Richard and Gail Courville.

*Brighton, Fernald, Taft & Hampsey P.A.*, of Peterborough (*J. Roderick Falby, Jr.*, on the brief), by brief for the defendant Dwight D. Sowerby.

JOHNSON, J. The plaintiff, New Hampshire Catholic Charities (Catholic Charities), appeals from a denial by the State Health Services Planning and Review Board (the board) of a motion filed by Catholic Charities for reconsideration or rehearing of the board's earlier decision denying Catholic Charities a certificate of need (CON), RSA 151-C:2, VIII, for the establishment of an 82-bed nursing home in the Keene area. We reverse and remand.

Catholic Charities was one of seven applicants who sought to obtain a CON to satisfy a need for 82 additional nursing home beds in Region 9, the Keene-Peterborough area. RSA 151-C:4 (Supp. 1987) states that no new "institutional health service," including a nursing home, can be established in New Hampshire unless the service provider has first secured a CON from the board.

Having determined that there was a need for 82 additional nursing home beds in Region 9, the board, on September 1, 1986, issued a request for proposals for new facilities to satisfy that need.

As of December 1, 1986, the deadline for submission of proposals, seven applicants, including Catholic Charities, had responded to the board's request. Catholic Charities proposed to build an 82-bed facility in West Swanzey. Among its competitors were Richard and Gail Courville (Courville), who proposed a 50-bed facility for West Swanzey, and Dwight Sowerby (Sowerby), who filed two separate proposals, one for 47 beds in Peterborough and one for 35 beds in Winchester.

The board's staff analyzed the data and projections that had been submitted with the proposals, and then ranked the proposals and submitted its recommendations to the board. The staff ranked the Catholic Charities proposal first among the seven submitted and recommended to the board that Catholic Charities be awarded a CON for 82 beds.

After circulating and reviewing the staff's summary and recommendations, the board held a public hearing on May 15, 1987. Each of the now six applicants (Beverly Enterprises, one of the original applicants, had withdrawn its proposal prior to the hearing) was allotted 50 minutes in which to present arguments and additional evidence in support of its proposal. Members of the public were also permitted to comment.

On May 22, 1987, the board met to discuss the respective proposals and to make a preliminary decision. The board decided, by a 6–1 vote, not to award an 82-bed CON to Catholic Charities. It subsequently decided, by a 5–2 vote, to award a 35-bed CON to Sowerby's Monadnock Nursing Home in Winchester and a 50-bed CON to the Courvilles' Homestead Nursing Home in West Swanzey. Thus, the board awarded CON's for a total of 85 beds despite the fact that it had earlier determined, and had informed all applicants, that the unmet bed need in Region 9 was 82.

On July 10, 1987, the board published a written notice of its final decision to award CON's to Sowerby and Courville. Catholic Charities thereupon filed a motion for reconsideration or rehearing, which was denied on August 21, 1987. Catholic Charities then appealed to this court. Catholic Charities does not contest the 35-bed CON awarded to Sowerby, but does contest the 50-bed CON awarded to Courville.

This case presents three questions. First, was the board's decision to award a CON for 50 beds to Courville unreasonable and arbitrary because it was based upon considerations that were largely immaterial to a proper CON review? Second, did the board's decision to award CON's for 85 beds, despite the fact that the predetermined need was for 82 beds, violate N.H. Admin.

Rules, He-Hea 906.01, a New Hampshire Department of Health and Human Services regulation that states that the board shall not approve a CON for more beds than are needed? Third, was the board's decision unreasonable because the board did not inform the applicants at the beginning of the application process or during the statutorily prescribed amendment period, RSA 151-C:8, XII(a) (Supp. 1987), that it would consider awarding CON's to more than one applicant?

■ Under our standard of review in administrative appeals, we will affirm the decision of the board unless we find the board's decision to be arbitrary or capricious or not made in compliance with applicable law. RSA 151-C:10, III (Supp. 1987), 541:13.

> "[T]he burden of proof shall be upon the party seeking to set aside any order or decision of the [board] to show that the same is clearly unreasonable or unlawful, and all findings of the [board] upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable."

RSA 541:13; *see appeal of Lemire-Courville Associates*, 127 N.H. 21, 23, 499 A.2d 1328, 1330 (1985).

■ Catholic Charities argues, first, that the board's decision to award a 50-bed CON to Courville and a 35-bed CON to Sowerby was arbitrary and unreasonable because the board made the award on the basis of criteria that are of minor significance to a CON review. We agree.

RSA 151-C:9, II (Supp. 1987) articulates the general standard that the board should employ when considering competing applications for a CON. RSA 151-C:9, II (Supp. 1987) states that "[t]he board shall consider competing applicants in relationship to each other. The decision shall be based on the applicant who demonstrates superiority in cost effectiveness, quality, and affordability and who will best meet the specifications and criteria outlined in the standard." RSA 151-C:7 (Supp. 1987) identifies the "criteria outlined in the standard," which are the minimal requirements that an applicant must meet in order to be awarded a CON. The applicant must demonstrate: (1) the immediate and long-range feasibility of the proposed project; (2) the availability of financial and human resources to complete the project and to

deliver services upon its completion; (3) the accessibility of the proposed services to medically underserviced persons, including the handicapped and indigent; and (4) that the proposed services will feature high-quality medical care. RSA 151-C:7, I–IV (Supp. 1987).

The board's staff evaluated the six proposals submitted for the Region 9 CON and concluded that the proposal submitted by Catholic Charities best met the need for nursing home services in the region. The board, however, did not base its evaluation on the standard and criteria contained in RSA 151-C:9, II (Supp. 1987) and RSA 151-C:7, I–IV (Supp. 1987), but instead relied heavily on erroneous interpretations of two State Department of Health and Human Services regulations that, even when correctly interpreted, are only marginally important to a CON review.

One of those regulations, He-Hea 903.01(e), requires a CON applicant to demonstrate that its proposed project can be integrated into the existing health care system of the area in which the new facility will be located. The board relied upon this regulation in concluding that the proximity of Courville's proposed facility to an existing retirement home favored the Courville proposal. The board erred in its reliance upon He-Hea 903.01(e) because that regulation bears only a limited relationship to the quality or cost effectiveness of nursing home care. Further, it is irrelevant in this case since Catholic Charities planned to operate its facility in the same West Swanzey neighborhood in which Courville planned to operate its facility.

The board also misconstrued He-Hea 903.01(d), which requires a CON applicant to demonstrate that resources are available to provide a reasonable percentage of its total services to Medicaid patients. Instead of analyzing the Medicaid rates projected by Catholic Charities in the context of the proposal's overall cost effectiveness, as the statutory standards require, the board focused upon the slight difference in projected Medicaid rates that existed between the Catholic Charities and Courville proposals, and used that slight difference as a basis for the decision favoring Courville. In so doing, the board paid scant attention to the substantial advantage enjoyed by Catholic Charities in rates charged to self-paying patients.

■ Furthermore, the board misapplied the language of RSA 151-C:1, III (Supp. 1987), which states that "[t]he State has an interest in promoting and stimulating competition in the health care marketplace as a means of managing the increases in health care costs." The board could have best promoted and stimulated cost effective competition in this instance by analyzing proposals

according to the statutory criteria that its staff used, and by awarding a CON to the applicant whose proposal best satisfied the quality of care and cost effectiveness requirements of RSA chapter 151-C (Supp. 1987). Competition and cost effectiveness do not require the award of multiple CON's; they require only a CON review that remains faithful to the standard and criteria contained in RSA 151-C:9, II (Supp. 1987) and RSA 151-C:7, I–IV (Supp. 1987), respectively.

Catholic Charities also argues that the board's award of CON's to Courville and Sowerby was "not made in compliance with applicable law," RSA 151-C:10, III (Supp. 1987), because it exceeded the unmet bed need in violation of He-Hea 906.01. We agree. Although He-Hea 906.01 permits the board to grant a CON "to one or more applicants in one or more locations in the region," it specifies that "[t]he total number of beds approved shall not exceed the unmet need." He-Hea 906.01 unequivocally commands the board to limit a CON award to the predetermined bed need, which, in this case, is 82. No qualification of that command appears anywhere in RSA chapter 151-C or in He-Hea 900, the regulatory chapter that addresses long-term health care facilities. We hold that the board, then, acted unlawfully in awarding CON's for 85 beds.

Courville counters that the bed-need limitation contained in He-Hea 906.01 must be construed consistent with the purposes of the CON law, a provision of which, RSA 151-C:13, I(e) (Supp. 1987), states that "increases of 9 beds or fewer or less than 10 percent of the bed complement" in a particular facility are not subject to CON reviews. In Courville's view, the board properly concluded, in a legitimate exercise of its discretion, that RSA 151-C:13, I(e) (Supp. 1987) permits an award of CON's for 3 beds over the 82-bed need.

Catholic Charities replies that the exemption from CON review contained in RSA 151-C:13, I(e) (Supp. 1987) for increases of "9 beds or fewer or less than 10 percent of the bed complement, whichever is less," does not permit the board to disregard the bed limit imposed by He-Hea 906.01. We agree.

RSA 151-C:13, I(a)–(e) (Supp. 1987), the so-called "leeway" provisions, exclude from CON review private physicians' and dentists' offices; dispensaries and first-aid stations located in business establishments, where they serve employees on an outpatient basis only; infirmaries owned and operated by educational institutions; institutions whose patients rely solely on treatment by prayer or other spiritual means; and the increase or

conversion, within an inpatient facility, of 9 or fewer beds or less than 10 percent of the bed complement, whichever is less.

██ In order to ascertain the legislature's intent in enacting RSA 151-C:13, I(e) (Supp. 1987), we must read that provision in the context of the statute of which it is a part. "[T]he meaning of a statute is determined from its construction as a whole and not by the construction of isolated words and phrases." *In re John Kevin B.*, 129 N.H. 286, 288, 525 A.2d 281, 283 (1987) (quoting *King v. Town of Lyme*, 126 N.H. 279, 284, 490 A.2d 1369, 1372 (1985)); *Theresa S. v. Sup't of YDC*, 126 N.H. 53, 55, 489 A.2d 592, 593 (1985). All of the sections of a statute must be construed together, *Blue Mountain Forest Ass'n v. Town of Croydon*, 119 N.H. 202, 204, 400 A.2d 55, 57 (1979), and "not viewed separately in isolation," *Arsenault v. Keene*, 104 N.H. 356, 358, 187 A.2d 60, 62 (1962).

██ Reading RSA 151-C:13, I(e) (Supp. 1987) in the context of RSA chapter 151-C leads to the conclusion that the aim of section (e) is to exempt from CON review an increase or conversion of a few beds in a residential facility that has either already received a CON for its larger operation or that is too small to be subject to the CON requirement. Reading RSA 151-C:13, I(e) (Supp. 1987) in context also leads to the conclusion that the purpose of the statute is *not* to enable the board to disregard the clear command of He-Hea 906.01 in order to reconcile discrepancies between the numbers of beds contained in the respective proposals of competing applicants. The "leeway" which sections (a)–(e) provide, then, is intended to benefit health care providers, not the board. RSA 151-C:13, I(e) (Supp. 1987) is therefore inapposite here, and the board committed a reversible error in awarding CON's in excess of the predetermined bed need in Region 9. *See* RSA 151-C:10, III (Supp. 1987).

Catholic Charities finally argues that the board's decision was unreasonable as well as unlawful because, in ignoring the plainly worded bed need limitation of He-Hea 906.01, the board damaged the competitive position of Catholic Charities vis-à-vis the other applicants in a way that Catholic Charities could not have foreseen and could not have rectified during the 45-day amendment period allowed by RSA 151-C:8, XII(a) (Supp. 1987). We agree.

█ Believing that the board's decision would be based upon applicable law, including He-Hea 906.01, Catholic Charities submitted, in December 1986, a proposal to construct an 82-bed facility. Not until May 8, 1987, when the board's staff filed its summary and recommendations, did Catholic Charities have reason

to believe that the board might award two CON's to satisfy the needs of Region 9. By that time, Catholic Charities could no longer amend its proposal in order to compete for one of two potential CON's because the statutorily prescribed amendment period had passed. RSA 151-C:8, XII(a) (Supp. 1987) specifies that applicants may submit amendments only during a 45-day period that commences on the date that the board notifies applicants that it is about to begin reviewing proposals. The board, therefore, acted unreasonably in failing to inform Catholic Charities either prior to the application deadline or during the amendment period that more than one CON might be awarded. As a result, Catholic Charities was unaware, during the application and amendment period, that it could enhance the pro-competitive nature of its application by amending that application to seek fewer beds. We thus conclude that Catholic Charities has more than met its burden of proof under RSA 541:13 because it has shown that the board's decision to grant two CON's, for a total of 85 beds, was *both* unlawful *and* unreasonable.

We conclude that the appropriate resolution to this dispute is a rehearing in which Catholic Charities is given an opportunity to present an amended proposal for 47 beds, to be considered by the board in competition with an amended 47-bed Courville proposal.

■ We reject Courville's contention that such a rehearing would be unjust to Courville because Courville offered at the May 15, 1987 public hearing to reduce its proposal from 50 to 47 beds or to accept a conditional CON, while Catholic Charities never proposed during the application process to reduce its proposal to 47 beds. Courville's view ignores the fact that Catholic Charities had no compelling reason during the application process to reduce its proposal because it understandably assumed that the board would grant a single CON for 82 beds. Although Catholic Charities knew that He-Hea 906.01 permits the board to grant a CON "to one or more applicants in one or more locations," Catholic Charities had no way of knowing that the board was sufficiently interested in promoting competition among health care providers to strongly favor awarding CON's to more than one applicant even if doing so necessitated exceeding the predetermined bed need. In the absence of such information, the decisions by Catholic Charities to submit a single proposal that addressed the entire bed need in Region 9, and to refrain from submitting an amended proposal for a reduced number of beds during the amending period, is entirely understandable. By the time Catholic Charities had reason to believe that the board might grant more than one CON, the time for amending its application

had expired; hence, any offer that Catholic Charities might have made, after the 45-day amendment period, to amend its proposal could not have been regarded by the board as a valid amendment under RSA 151-C:8, XII(a) (Supp. 1987). Courville's view also ignores the fact that its own offer to reduce the number of beds in its application from 50 to 47, which was also made after the expiration of the amendment period, was not a valid amendment under RSA 151-C:8, XII(a) (Supp. 1987).

Because the board conducted the CON application process in an unlawful and unreasonable manner, and because both Catholic Charities and Courville have expressed a desire to submit proposals for 47 beds in order to "match up" with Sowerby's 35-bed facility, the board should hold a rehearing in order to evaluate the relative merits of the revised Catholic Charities and Courville proposals. The rehearing will afford both parties a chance to present lawfully amended proposals, secure in the knowledge that the board will award one of them a 47-bed CON to complement Sowerby's 35-bed CON.

 We conclude that the decision of the health services planning and review board to award two CON's for a total of 85 nursing home beds in Region 9 was both unlawful and unreasonable, RSA 151-C:10, III (Supp. 1987), 541:13. We therefore reverse and remand to the board for a rehearing to consider the 47-bed proposals of Catholic Charities and Courville.

*Reversed and remanded.*

All concurred.