Grafton
No. 89-105

THE STATE OF NEW HAMPSHIRE

v.

SETH E. SPRINGER

May 24, 1990

*John P. Arnold*, attorney general (*William H. Lyons*, assistant attorney general, on the brief and orally), for the State.

*Joanne Green*, assistant appellate defender, of Concord, by brief, and *W. Kirk Abbott, Jr.*, assistant appellate defender, orally, for the defendant.

SOUTER, J.   This appeal from an order of restitution issued by the Superior Court (*Morrill*, J.) questions whether an insurer that has

compensated its insured for consequences of a crime is a "victim" suffering loss as a "direct result" of criminal conduct, within the meaning of RSA 651:62, VI, and therefore eligible for restitution under RSA 651:63. We hold it is not and reverse.

A 1985 sentence included an order under the latter statute, directing the defendant, Seth Springer, to make restitution to certain individual theft victims. In 1988, he moved for partial relief from that order on the ground that "a substantial portion of said restitution is now owed to . . . insurance companies as subrogated claims for amounts paid on behalf of their insureds." The superior court denied relief after concluding, *inter alia*, that an insurer that has made good on its insured's criminally-caused loss may be named as payee of a reimbursement order under New Hampshire's restitution act, RSA 651:62–67.

Statutory authorization for a sentencing court to order restitution was first proposed in 1979, *see* 1979 House bill 862, and was enacted in 1981, *see* Laws 1981, ch. 329, after a legislative study that gave attention to the Maine statute on the subject, 17-A ME. R.S.A. 1321–29, *see* Notes of House Judiciary Committee, executive session, March 26, 1980. The New Hampshire statute provides that "[a]ny offender may be sentenced to make restitution," RSA 651:63, defined as "moneys, compensation, work or service to be reimbursed by the offender to the victim . . . ," RSA 651:62, V. "Victim" is in turn defined as "a person or claimant who suffers personal injury, death or economic loss as a direct result of an offender's criminal conduct or the good faith effort of any person attempting to prevent or preventing the criminal conduct." RSA 651:62, VI.

Although the references to sufferers of "direct" loss expressed a legislative intent to limit the class of victims under the statute, the adjective does not demarcate exactly between those eligible and those not. "Direct" might, for example, have been meant to exclude those with derivative or consortium claims; or dependants who look to an injured person for support; or indemnifiers with rights of recovery by assignment of the indemnitee or under the general principle of an insurer's subrogation to the insured's right of action. *See McCullough v. Company*, 90 N.H. 409, 411, 10 A.2d 245, 247 (1939). This uncertainty prompts a look at legislative history to determine whether the General Court meant to treat an insurer who has paid for a criminally-caused loss as a "victim" of the "direct" loss on which a statutory restitution order must be predicated.

Two facts stand out. The first is that the availability of insurance as a factor bearing on the need to authorize indemnification orders was on the legislative mind when the 1979 bill was committed to interim study. *See* N.H.H.R. JOUR. 398 (1979) ("the intent of HB 862 is admirable, but raises many questions relating to insurance eligibility. . . ."). The second such fact is that the Maine statute on which the 1981 legislation was modeled, *see* Notes *supra*, identifies an eligible "victim" without any limitation by reference to direct loss, 17-A ME. R.S.A. 1322:7, and expressly provides for indemnifying "collateral sources" of victim compensation, like insurance companies, 17-A ME. R.S.A. 1324:3. Because the subsequent New Hampshire enactment is distinguishable in each respect, there is a fair inference that the restrictive definition of reimbursable loss and the failure to provide for reimbursing collateral sources reflected an intent to exclude insurers, as such, from the class of victims whose losses are subject to statutory restitution orders.

The State's arguments to the contrary deserve mention, unavailing though they are. First, the State cites *Pratt v. State*, 486 A.2d 1154 (Del. 1983), in which the Supreme Court of Delaware construed a statutory provision to order restitution for "direct result[s]" of a crime, as consistent with including insurers, as such, among those entitled to benefit. Without any disrespect to the Supreme Court of Delaware, however, we would not place much weight on that case. Not only are there textual differences between the New Hampshire and Delaware statutes that limit the usefulness to us of opinions construing the latter, but it is most significant that the court in *Pratt* faced no legislative history comparable to ours. That history outweighs any persuasive authority *Pratt* might carry, since our obligation is to construe any statutory ambiguity before us as our own legislature most probably intended.

Second, the State's brief notes that "the court may order restitution to a class of persons known as claimants," which class is defined to include "any person legally authorized to act on behalf of the victim," *see* RSA 651:62, I. The argument runs that a "person legally authorized" ought to include an insurer. Although we can agree that the statutory reference to claimants provides another avenue for raising the issue before us, we do not find in it any resolution of the statute's ambiguity. The fact remains that the statutory authorization to award "restitution," RSA 651:63, depends on the definition of that quoted term, which limits its entitlement to a "victim," RSA 651:62, V. A "victim," as we have seen, must be a person or claimant

injured as a "direct result" of the crime, and we have also seen why this language must be construed to exclude insurers.

Next, the State argues that if the victim's insurer were not itself also within the class of eligible victims there would be no reason to provide, as the statute does, that any restitution ordered and paid "shall be deducted from the amount of any judgment awarded in a civil action brought by the victim or other authorized claimant against the offender based on the same facts." RSA 651:65. The answer is that the definition of "claimants," quoted above, clearly includes more than insurers as such. The need, therefore, to limit the defendant's liability to a single restitution tells us nothing unequivocally about the status of such an insurer as itself a victim.

The State's fourth argument is that if insurers may not recover as statutory indemnitees for payments made to victims of criminality, they would naturally be inclined to delay any such payments under their policies, and a "provision requiring prompt payment of victims' claims by insurance companies would then be necessary to combat this incentive for delay." The short answer to this is that such a "provision" exists already, in the common law rule requiring timely payment in satisfaction of the common law obligation of good faith in contractual performance. *See Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 612, 392 A.2d 576, 580 (1978).

Finally, the State argues that to construe the statute as we do would produce an absurd result in light of the act's rehabilitative purpose. *See* Laws 1981, 329:1; *State v. Fleming*, 125 N.H. 238, 242, 480 A.2d 107, 110 (1984). The rehabilitation of the criminal who preys on the uninsured would be promoted by ordering restitution, while the defendant who victimizes the insured would not be so influenced. Taking this objection at face value, it is best answered by redirecting it to the legislature. The State may find a potential absurdity in what the legislature intended, but when the intent is consistent with the language employed, this court has no interpretive right to disregard it in disparagement of the legislative choice it reflects.

Because the order on appeal rested on a statutory construction inconsistent with the legislature's choice, it is reversed and the case is remanded for further hearing on the defendant's motion.

*Reversed.*

All concurred.