Merrimack
No. 91-420

BARBARA BARKSDALE & a.

v.

TOWN OF EPSOM

EPSOM SCHOOL BOARD & a.

v.

TOWN OF EPSOM BOARD OF SELECTMEN

December 23, 1992

*Sulloway & Hollis*, of Concord (*Warren C. Nighswander* on the plaintiffs' joint brief and orally), and *Backus, Meyer & Solomon*, of Manchester (*Jon Meyer* on the plaintiffs' joint brief and orally), for the plaintiffs Barbara Barksdale & a.

*Theodore Comstock*, of Concord, on the plaintiffs' joint brief, for the plaintiffs Epsom School Board & a.

*Ransmeier & Spellman, P.C.*, of Concord (*Charles P. Bauer* on the brief), and *Landmark Legal Foundation Center for Civil Rights*, of Washington, D.C. (*Debra R. Cruel* on the brief and orally), for the defendants.

*Steven R. Sacks*, of Concord, staff attorney, by brief for NEA-New Hampshire, as *amicus curiae.*

*Steven K. Green*, of Silver Spring, Maryland, legal counsel, by brief for Americans United for Separation of Church and State, as *amicus curiae.*

JOHNSON, J.  This case involves a town tax abatement program designed to reimburse persons for money spent educating students in schools outside the local school system. The defendants in these consolidated cases, the Town of Epsom and its board of selectmen (collectively referred to as "the selectmen"), appeal the Superior Court's (*Manias*, J.) order declaring the selectmen's abatement program invalid under former RSA 76:16 (hereinafter "RSA 76:16") (amended version at RSA 76:16 (Supp. 1992)). The plaintiffs are Barbara Barksdale and thirty-five other Epsom citizens and taxpayers, suing on behalf of themselves and all other Epsom citizens and taxpayers, and the Epsom School Board and its individual members. On appeal, the selectmen argue that abatements granted pursuant to their program are granted "for good cause" and, therefore, satisfy the requirements of RSA 76:16. The selectmen also dispute the plaintiffs' contention that the program violates part I, article 12 and part II, articles 5 and 83 of the New Hampshire Constitution, as well as the first amendment to the United States Constitution. Because we affirm the superior court's finding of a statutory violation, we do not reach the constitutional issues, *see State v. Hodgkiss*, 132 N.H. 376, 379, 565 A.2d 1059, 1061 (1989), and relate only those facts relevant to the statutory question.

The selectmen adopted their abatement program in December 1990 in response to an escalating education budget and a perceived need for expanded choice and competition in education. The program applies only to Epsom high school students, most of whom attend the neighboring Town of Pembroke's high school at a cost to Epsom of almost $5,000 per student. Epsom has no high school of its own and contracts with Pembroke to educate its high school students. In its

basic form, the program provides that if an Epsom high school student attends a school other than Pembroke's high school, and if an Epsom taxpayer pays that student's educational expenses, then the selectmen may abate the taxpayer's real estate taxes by up to $1,000. Thirteen people, all of whom had children enrolled in secondary schools other than Pembroke's during the 1990–91 school year, applied for the abatement for the 1991–92 school year. Twelve received the requested abatement; the thirteenth application was denied as untimely.

The plaintiffs asked the superior court to declare the abatement program invalid under RSA 76:16, which allows selectmen to grant abatements "for good cause." The superior court determined that this court "has limited the phrase ['good cause'] to two specific applications: disproportionate assessment, and inability to pay." As the situation of the abatement applicants fell into neither of these two categories, the superior court ruled the program violative of RSA 76:16. In addition, the superior court found "that the educational tax abatement program is more accurately characterized as an exemption from tax, rather than an abatement of tax." As such, the court held the program beyond the authority of the selectmen to adopt, citing *Trustees &c. Academy v. Exeter*, 92 N.H. 473, 480, 33 A.2d 665, 670 (1943) (tax exemption is within the legislature's province).

On appeal, the selectmen assert that the superior court should have broadened its interpretation of the phrase "for good cause" to include the standards of justice and equity. In response, the plaintiffs urge us to adopt the superior court's reasoning and in addition argue that the selectmen's program violates another provision of RSA 76:16, that persons receiving an abatement be personally aggrieved by the tax.

We begin with an examination of the statute. *See Chambers v. Geiger*, 133 N.H. 149, 152, 573 A.2d 1356, 1357 (1990). It reads:

> "Selectmen or assessors, *for good cause shown*, may abate any tax assessed by them or by their predecessors. *Any person aggrieved by the assessment of a tax* and who has complied with the requirements of RSA 74, may, within 60 days after notice of the tax, and not afterwards, apply in writing to the selectmen or assessors for an abatement of the tax."

RSA 76:16 (emphasis added). The statute's current version contains amendments not material to issues raised by this appeal. *See* RSA 76:16 (Supp. 1992).

The critical words, "good cause," are not defined in the statute, but the plaintiffs assert that the language "[a]ny person aggrieved by

the assessment of a tax" evinces an intent to limit the application of the statute to situations of personal inequity, not problems of public policy. *Cf. Appeal of N.H. Catholic Charities*, 130 N.H. 822, 828, 546 A.2d 1085, 1088–89 (1988) (meaning of statute is determined from its construction as a whole). The selectmen do not fault the plaintiff's premise, but counter that persons seeking abatements under their program are indeed "personally aggrieved." The program, they argue, provides relief for individual taxpayers who, by educating children outside of the Epsom school system, are relieving Epsom of a substantial tax burden and at the same time shouldering more than their fair share of that load. *See Bretton Woods Co. v. Carroll*, 84 N.H. 428, 431, 151 A. 705, 706 (1930) (issue is whether petitioner is unlawfully or unjustly taxed in relation to other taxpayers).

■ We agree with the plaintiffs that a taxpayer must be "personally aggrieved" by a tax to receive an abatement, *see* RSA 76:16, and reject the selectmen's argument that their abatement program meets this requirement. A citizen cannot claim tax aggrievement merely because he or she does not personally add to the public education expense. *Cf. Union Transit Co. v. Kentucky*, 199 U.S. 194, 203 (1905) (taxpayers cannot refuse to pay tax simply because they do not receive equal share of benefits; childless citizens are bound to pay normal share of school tax); 1 T. COOLEY, THE LAW OF TAXATION § 89, at 214, § 261, at 564–65 (C. Nichols ed., 4th ed. 1924) (same). Accordingly, we find that persons qualifying for abatements under the selectmen's program are not "aggrieved" for purposes of RSA 76:16, and that the program as a whole thereby violates the statute.

■ Although our analysis could end here, we find additional support for our holding by examining the term "good cause." We look first at its "plain and ordinary meaning." *See Catalano v. Town of Windham*, 133 N.H. 504, 511, 578 A.2d 858, 862 (1990). Webster's defines "good cause" as "a cause or reason sufficient in law: one that is based on equity or justice or that would motivate a reasonable man under all the circumstances." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 978 (unabridged ed. 1961). The latter part of the definition supports the selectmen's attempt to attach a broad meaning to the words, while the former implies that "good cause" derives its sense from judicial interpretation. This inherent ambiguity necessitates an investigation beyond the statute to the relevant legislative history, *see Petition of Public Serv. Co. of N.H.*, 130 N.H. 265, 282, 539 A.2d 263, 273 (1988), in addition to our customary examination of the statutory scheme and past judicial interpretation.

As the selectmen point out, this court has never explicitly limited the application of the statute to situations of disproportionate assessment and inability to pay. On the other hand, during the one hundred and fifty years since RSA 76:16 was adopted, *see* RSA 76:16 annot.; RS 44:1 (1842), this court has never affirmed an abatement for anything *other* than disproportionate assessment or inability to pay. *See, e.g., Ansara v. City of Nashua*, 118 N.H. 879, 880, 395 A.2d 513, 515 (1978); *Hodges v. Kensington*, 102 N.H. 399, 400, 157 A.2d 649, 650 (1960); *Bretton Woods*, 84 N.H. at 431, 151 A. at 706; *Edes v. Boardman*, 58 N.H. 580, 587 (1879); *Briggs' Petition*, 29 N.H. 547, 551–52 (1854). This consistent application of the statute supports the plaintiffs' position. *See Bretton Woods, supra* at 432, 151 A. at 707 (that a similar abatement had apparently never previously been granted bolstered court's decision not to approve one). The selectmen cite *Dewey v. Stratford* for the proposition that "[t]he authority of selectmen to abate is not in any way restricted," *Dewey v. Stratford*, 40 N.H. 203, 206 (1860) (taxpayers cannot be denied abatements merely because they are non-residents), but we think the balance of this court's decisions on abatements counsel against elevating this dictum out of its context. We conclude that our court's past interpretation of the statute supports a less than boundless view of the term "good cause."

We next turn to an examination of the relevant legislative history. The selectmen cite several instances of the legislature granting or authorizing abatements for persons who undertake responsibilities that reduce a municipality's fiscal burden, *see, e.g.,* Order of General Assembly (Nov. 9, 1699) (abatement for Eliz. Harvey, "by reason she keeps the post office"), *reprinted in* 1 LAWS OF NEW HAMPSHIRE 668 (1904), or inure to the public benefit, *see, e.g.,* Laws 1834, ch. CLXXXI, at 163 (abatement for persons who pay taxes early); Vote of General Assembly (May 29, 1691) (abatement for soldiers), *reprinted in* 1 LAWS OF NEW HAMPSHIRE 477 (1904). The selectmen assert that taxpayers who pay to educate a child outside the Epsom school system are just as deserving of tax relief. The issue here is not whether the *legislature* has the authority to grant relief of this nature, but whether *selectmen* may do so in the name of "good cause." The selectmen have cited no cases or relevant history supporting such authority and we have found none. Again, we find this supports the plaintiffs' position. *See Bretton Woods*, 84 N.H. at 432, 151 A. at 707.

■ Finally, we examine other portions of RSA chapter 76, because "all statutes upon the same subject-matter are to be consid-

ered in interpreting any one of them." *Appeal of Town of Hampton Falls*, 126 N.H. 805, 809, 498 A.2d 304, 307 (1985) (quotation omitted). In particular, we note that RSA 76:18 directs a municipality to abate a person's tax by up to three dollars if the person maintains a watering trough for horses, provided that the trough is found by the selectmen to be "necessary for the convenience of travelers." Similarly, RSA 76:19 grants selectmen the discretionary authority to abate a portion of the taxes of a person who plants shade trees alongside a highway adjoining the person's land. Each of these statutes in effect compensates someone for undertaking a responsibility that benefits the municipality.

While the selectmen point to these statutes to support their argument that RSA 76:16 sanctions its abatement program, we believe the statutes bolster the opposite conclusion. RSA 76:16 was enacted before either RSA 76:18 or RSA 76:19, *see* RS 44:1; Laws 1858, ch. 2122; G.L. 37:9, and therefore we may presume that the legislature knew of RSA 76:16 at the time it enacted the later statutes, *see Appeal of Hampton Falls supra.* If RSA 76:16 allows a municipality to abate taxes to compensate someone for maintaining a watering trough or planting shade trees under the rubric "good cause," as the selectmen suggest, then it is difficult to understand why the legislature would have found it necessary to enact RSA 76:18–19. This is particularly true of RSA 76:19, which merely authorizes—not directs—selectmen to grant such abatements. As the selectmen's interpretation of RSA 76:16 would turn RSA 76:19 into mere surplusage, *see Town of Wolfeboro v. Smith*, 131 N.H. 449, 453, 556 A.2d 755, 757 (1989), we reject it and instead conclude that the words "good cause" do not apply to the selectmen's desire to compensate Epsom taxpayers who educate Epsom high school students outside the Epsom school system.

Our above analyses address all of the selectmen's relevant arguments but one, that the superior court "abused its discretion when it substituted its judgment of what 'good cause' is within the meaning of RSA 76:16 for that of the Board of Selectmen." We answer simply that construction of RSA 76:16 is a question of law and, therefore, the superior court was not obliged to accord any deference to the decision of the selectmen.

*Affirmed.*

THAYER, J., did not sit; the others concurred.