Derry District Court
No. 93-353

THE STATE OF NEW HAMPSHIRE

v.

KENT WOODS

February 3, 1995

*Jeffrey R. Howard,* attorney general (*Mark D. Attorri,* assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J. The Derry District Court (*Thornton,* J.) found the defendant, Kent Woods, guilty of the violation of simple assault committed in a fight entered into by mutual consent. RSA 631:2-a (1986). The court sentenced Woods to a fine and ordered him to pay restitution to the victim "through the Department of Probation on all unreimbursed or uninsured hospital, surgical, medical or other causally related expenses." Woods estimates these expenses at approximately $7,000. He appeals, contending that a court has no statutory authority to order restitution in the case of a violation. Woods also argues that

the district court failed to support its restitution order with the findings required by *State v. Fleming*, 125 N.H. 238, 480 A.2d 107 (1984). We affirm.

We address Woods' statutory argument first. Under RSA 651:63 (1986), "[a]ny offender may be sentenced to make restitution." RSA 651:62, V (1986) defines "restitution" as "moneys, compensation, work or service to be reimbursed by the offender to the victim who suffers personal injury, death or economic loss under this subdivision." " 'Offender' means any natural person convicted of a criminal or delinquent act," RSA 651:62, IV (1986), while " '[v]ictim' means a person or claimant who suffers personal injury, death or economic loss as a direct result of an offender's criminal conduct . . . ," RSA 651:62, VI (1986). "Criminal" is not defined in the Criminal Code.

Woods argues that his violation is not a "criminal" act because under RSA 625:9, II(b) (1986), a violation is not a "crime." Consequently, he reasons, he is not an "offender" as defined by RSA 651:62, IV, and thus cannot be sentenced to pay restitution under RSA 651:63. We disagree.

 This case turns on the meaning of "criminal." "On questions of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *State v. Johnson*, 134 N.H. 570, 575, 595 A.2d 498, 502 (1991) (quotation omitted). Where the statutory scheme does not define a disputed term, we assign it a plain and ordinary meaning. *See Union Leader Corp. v. Fenniman*, 136 N.H. 624, 626, 620 A.2d 1039, 1040 (1993); *Barksdale v. Town of Epsom*, 136 N.H. 511, 514, 618 A.2d 814, 816 (1992).

Following these rules of construction, we find "criminal" ambiguous. WEBSTER'S defines "criminal" in terms of the word "crime." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 536 (unabridged ed. 1961). As noted above, under RSA 625:9, II(b), a "crime" excludes a violation. On the other hand, WEBSTER'S defines "crime" broadly enough to embrace Woods' conduct here. WEBSTER'S, *supra*. These conflicting definitions create an ambiguity.

We also observe that the legislature's use of the word "crime" in RSA chapter 651, governing sentences, occasionally departs from the strict definition found in RSA 625:9, II(b). In at least three places, "crime" is used in a context that appears to include violations. RSA 651:2, VI, :5, II, III (1986 & Supp. 1994). This weakens Woods' argument that "criminal" must be interpreted using the definition of "crime" from RSA 625:9, II(b).

 In light of these interpretational ambiguities, we look to the relevant statutory scheme and legislative history for guidance. *See Barksdale*, 136 N.H. at 514, 618 A.2d at 816. The statutes pertaining to

restitution, RSA 651:62-:67 (1986), are found in RSA chapter 651 (1986 & Supp. 1994), governing sentences under the Criminal Code. *Cf. State v. Fitzgerald*, 137 N.H. 23, 622 A.2d 1245 (1993) (traffic violation under RSA chapter 265 not "criminal" for double jeopardy purposes in part because violation exists outside Criminal Code). Under RSA 651:2, III (1986) (current version at RSA 651:2, III (Supp. 1994)), "[a] person convicted of a violation may be sentenced to probation, conditional or unconditional discharge, or a fine." Conditional discharge is described in RSA 651:2, VI (1986) (current version at RSA 651:2, VI (Supp. 1994)):

> A person may be sentenced to a period of conditional discharge if he is not imprisoned and the court is of the opinion that probationary supervision is unnecessary, but that the defendant should conduct himself according to conditions determined by the court. Such conditions may include . . . *restitution to the victim*. The period of a conditional discharge shall be 3 years for a felony and one year for a misdemeanor or *violation*. However, if the court has required as a condition that the defendant make *restitution* or reparation to the victim of his offense and that condition has not been satisfied, the court may, at any time prior to the termination of the above periods, extend the period for a felony by no more than 2 years and for a misdemeanor or *violation* by no more than one year in order to allow the defendant to satisfy the condition.

(Emphasis added.) This statute plainly contemplates restitution as a condition of discharge upon conviction of a violation. Although conditional restitution is different from restitution under RSA 651:62–:67, it is axiomatic that all statutes relating to a similar subject should be construed consistently with one another, *see Petition of Public Serv. Co. of N.H.*, 130 N.H. 265, 282, 539 A.2d 263, 273 (1988), *appeal dismissed*, 488 U.S. 1035 (1989). Significantly, the conditional discharge statute quoted above, RSA 651:2, VI, was adopted in 1971, well before RSA 651:62–:67. *See* Laws 1971, 518:1. Presumably, the legislature was aware of RSA 651:2, VI when it enacted RSA 651:62–:67 in 1981. If the legislature had intended to restrict restitution under RSA 651:62–:67 to persons found guilty of only felonies and misdemeanors, thereby creating a distinction that did not exist under RSA 651:2, VI, we think it would have made this intention plain.

Also instructive is this court's interpretation of RSA 651:2, VI in *State v. Thayer*, 118 N.H. 819, 395 A.2d 500 (1978). Although this case was decided three years before the enactment of the restitution

statutes at issue, it is nevertheless helpful to our analysis. We stated: "Restitution is a method of punishment; it repairs a breach of the law by requiring the perpetrators of a *criminal* act to make the victim whole." *Id.* at 824, 395 A.2d at 504 (emphasis added). As noted above, conditional restitution under RSA 651:2, VI applies to violations as well as to felonies and misdemeanors. Accordingly, this court described as "criminal" that which is punishable as a violation.

We turn now to the legislative history of RSA 651:62–:67. This court has already noted that the legislature modeled these provisions after Maine's restitution law. *State v. Springer*, 133 N.H. 223, 224, 574 A.2d 1381, 1382 (1990); *see* Notes of House Judiciary Committee, public hearing, April 14, 1981. *Compare, e.g.*, ME. REV. STAT. ANN. tit. 17-A, § 1321 (West 1964) *with* Laws 1981, 329:1. A draft of 1979 house bill 862, precursor to RSA 651:62–:67, defines "offender" and "victim" differently than the final, enacted bill. The draft is similar to the Maine statute then in effect, *see* ME. REV. STAT. ANN. tit. 17-A, § 1322(5), (7) (West 1964) (current version at ME. REV. STAT. ANN. tit. 17-A, § 1322(5), (7) (West Supp. 1993)), defining "offender" as "any natural person convicted of a *crime* or a delinquent act." Notes of House Judiciary Committee, 1981 house bill 680 (emphasis added). Similarly, the draft defined "victim" as "a person who suffers personal injury . . . as a result of a *crime* . . . ." *Id.* (emphasis added). The enacted version, of course, uses the word "criminal" instead of "crime." RSA 651:62, IV, VI.

Although the legislative history does not explain the reason for the definitional change, we note that in Maine, "crime" has a different meaning than in New Hampshire. A "crime" in Maine can be a "Class E" crime, ME. REV. STAT. ANN. tit. 17-A, § 4(1) (West 1964), and some acts constituting "Class E" crimes in Maine are termed violations in New Hampshire. *Compare* ME. REV. STAT. ANN. tit. 17-A, § 501(1)(B), (6) (West 1964) (stink bombs); *id.* § 501(2), (6) (West 1964) (taunting) *with* RSA 644:16-a (1986) (stink bombs); RSA 644:2, II(b), V (1986) (taunting). Thus, under Maine law, a defendant may be ordered to pay restitution for an offense that would be deemed a violation in New Hampshire.

The legislative history described above, as well as our view of the relevant statutory scheme, strongly favors including violations in the meaning of the word "criminal" in RSA 651:62, IV. *Cf. Fitzgerald*, 137 N.H. 23, 622 A.2d 1245; *State v. McConnell*, 70 N.H. 158, 46 A. 458 (1899). We therefore conclude that the district court here had ample statutory authority to sentence Woods to pay restitution to the victim of his offense.

Woods' second argument on appeal is that the district court failed to support its restitution order with adequate findings. In *State v.*

*Fleming*, 125 N.H. 238, 480 A.2d 107, this court held that "restitution [under RSA 651:62–:67] may be ordered when three criteria are met: (1) restitution will serve to rehabilitate the offender; (2) restitution will compensate the victim; and (3) no other compensation is available." *Id.* at 292, 480 A.2d at 110. Woods contends that the sentence of restitution must be vacated because the district court's order contains no reference to these criteria. Again, we disagree.

The district court sentenced Woods to pay restitution at the end of an evidentiary hearing held on March 11, 1993. Woods later filed a motion to reconsider and two memoranda of law, asserting that the court lacked authority to make the restitution order. Although one of the memoranda raised the *Fleming* issue, the principal focus of the pleadings was on the statutory question discussed in the first part of this opinion. On May 13, 1993, the court held an unrecorded hearing on Woods' motion. The same day, the court denied the motion, stating: "The only real issue is not the potential amount of the restitution, but the authority of the Court to order restitution of any type or amount as a part of a sentence in a violation."

We find the lack of a transcript of the May 13 hearing fatal to Woods' *Fleming* argument. "It is well established that the burden of providing this court with a sufficient record to decide the issue raised on appeal is upon the moving party, in this case, the defendant." *State v. Bergmann*, 135 N.H. 97, 99, 599 A.2d 502, 504 (1991); *see* SUP. CT. R. 13, 15. "In the absence of a transcript, the evidence is presumed to support the result reached below," *Cornforth v. Cornforth*, 123 N.H. 61, 63, 455 A.2d 1049, 1050 (1983), and the court's order scrutinized only for errors of law, *see State v. Cox*, 133 N.H. 261, 265, 575 A.2d 1320, 1323 (1990). No legal errors are apparent. The court's conclusion that the potential amount of restitution was not a "real issue" must be presumed an accurate reflection of the parties' representations at the hearing. Moreover, without the benefit of a record, we assume that the district court considered the *Fleming* criteria and resolved them against Woods based on sufficient evidence.

*Affirmed.*

BROCK, C.J., and THAYER, J., concurred in the result only; the others concurred.