NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2016-0350

ROBERT CARR & a.

v.

TOWN OF NEW LONDON

Argued:  February 23, 2017
Opinion Issued:  May 17, 2017

Hage Hodes, Professional Association, of Manchester (Jay L. Hodes and Katherine E. Hedges on the brief, and Mr. Hodes orally), for the petitioners.

Upton & Hatfield, LLP, of Concord (Barton L. Mayer and Michael P. Courtney on the brief, and Mr. Mayer orally), for the respondent.

LYNN, J.  The respondent, the Town of New London (Town), appeals an order of the Superior Court (McNamara, J.) granting summary judgment to the petitioners, Robert Carr (Carr) and Raoul & Karen, LLC (Raoul & Karen), in their appeal of the Town's denial of their request for a property tax abatement pursuant to RSA 76:16 (Supp. 2016).  We affirm.

I

The pertinent facts are as follows.  During the 2014 tax year, Carr owned property located at 29 Boulder Point Road in New London from April 1, 2014[1],

_____
[1] The tax year begins on April 1.  See RSA 74:1 (2012); RSA 76:2 (Supp. 2016); Gilford v. State Tax Commission, 108 N.H. 167, 169 (1967).

to December 20, 2014, at which time he sold the property to Raoul & Karen.[2] The house on the property was struck by lightning and burned to the ground on July 1, 2014, leaving only a few outbuildings on the property.  As a result of the house's destruction, the petitioners could not use it for 272 of the 365 days of the 2014 tax year.  The Town assessed the house at $688,000 for that tax year.

The year prior to the house's destruction, a statute came into effect that provided for prorated tax assessments for buildings damaged under certain conditions.  See RSA 76:21 (Supp. 2016).  RSA 76:21 provides, in relevant part:

> I.  Whenever a taxable building is damaged due to unintended fire or natural disaster to the extent that it renders the building not able to be used . . . the assessing officials shall prorate the assessment for the building for the current tax year.
>
> . . . .
>
> III.  A person aggrieved of a property tax for a building damaged as provided in paragraph I shall file an application with the assessing officials in writing within 60 days of the event described in paragraph I.
>
> . . . .
>
> VI.  Nothing in this section shall limit the ability of the assessing officials to abate taxes for good cause shown pursuant to RSA 76:16.

The petitioners did not apply for a proration of their property tax assessment under RSA 76:21.  Rather, they petitioned the Town for property tax abatement under RSA 76:16 in January 2015, about six months after the home's destruction.  RSA 76:16 states that "[s]electmen or assessors, for good cause shown, may abate any tax, including prior years' taxes, assessed by them or by their predecessors."

The Town denied the petitioners' application because they had not timely filed for proration under RSA 76:21.  The Town did not dispute that the petitioners filed their application for abatement under RSA 76:16 in a timely manner, and the petitioners did not dispute that they did not file their application within the sixty-day deadline required by RSA 76:21, III.

The petitioners appealed to the superior court pursuant to RSA 76:17, and both parties moved for summary judgment.  The Town argued that RSA 76:21 provides the exclusive remedy to taxpayers seeking abatement based

---

[2] The principals of Raoul & Karen, Ryan and Kelly Carr, are Carr's children.

upon property damage caused by fire or natural disaster. The petitioners asserted that RSA 76:21 states that relief under RSA 76:16 remains available, and that their application should not have been denied solely because it was made under RSA 76:16 instead of RSA 76:21.

To determine whether RSA 76:21 precludes application of RSA 76:16 for fire-related building loss, the trial court looked to the plain language of RSA 76:21 and found that language ambiguous. It found nothing in the language or history of the statute that evinced an intent to limit taxpayers to RSA 76:21 as their single avenue for relief. The court thus construed RSA 76:21 in the petitioners' favor, and ruled that the statute did "not limit taxpayers' ability to apply for abatement under RSA 76:16." The court then evaluated whether the petitioners had shown "good cause" for abatement under RSA 76:16, and concluded that they had. Accordingly, the court granted summary judgment in favor of the petitioners on their request for a tax abatement. This appeal followed.

II

On appeal, the Town argues that the trial court erred because: (1) the date of assessment of property is April 1, and no subsequent event during the tax year may result in an abatement of that assessment; (2) RSA 76:21, VI preserves, but does not alter, the existing authority of assessing officials to abate taxes for good cause shown under RSA 76:16; (3) RSA 76:21 forecloses relief under RSA 76:16 for fire- or natural disaster-related building loss; (4) the trial court's order violates the preemption doctrine; and (5) the trial court's granting of the abatement, which the Town characterizes as equitable in nature, cannot be in derogation of established principles of law. We address these arguments below.

The Town first asserts that, because property tax assessments are conducted as of April 1 under RSA 74:1 and 76:2, events occurring after that date during the tax year that alter a property's value "do not alter the tax obligations set as of that date." See RSA 74:1, 76:2. The Town argues that the single exception to this rule is the prorated assessment for damaged buildings provided for by RSA 76:21, not "good cause" abatements under RSA 76:16. As support for its view, the Town cites Appeal of Hood, 127 N.H. 824 (1986), in which we held that a taxpayer was not eligible for a property tax exemption for elderly persons because the taxpayer's birthday occurred after April 1. See Hood, 127 N.H. at 825.

Because resolution of this issue requires statutory interpretation, our review is de novo. Henderson Holdings at Sugar Hill v. Town of Sugar Hill, 164 N.H. 36, 38 (2012). "In matters of statutory interpretation, we are the final arbiters of legislative intent as expressed in the words of the statute considered as a whole." Id. "We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used." Id. "Furthermore, we

3

interpret statutes in the context of the overall statutory scheme and not in isolation." Id. at 38-39. "Our goal is to apply statutes in light of the legislature's intent in enacting them and in light of the policy sought to be advanced by the entire statutory scheme." Id. at 39 (quotation omitted). However, "[i]f a taxing statute is ambiguous we construe it against the government and in favor of the taxpayer." N.H. Resident Ltd. Partners of Lyme Timber Co. v. N.H. Dep't of Revenue Admin., 162 N.H. 98, 102 (2011).

Prior to its amendment in 2012, RSA 76:2 stated: "The property tax year shall be April 1 to March 31 and all property taxes shall be assessed on the inventory taken in April of that year." RSA 76:2 (2012) (amended 2012). The Town argues that this language necessitates the conclusion that damages occurring after April 1 do not constitute "good cause" for abatement pursuant to RSA 76:16 because all tax obligations are immutable after April 1. According to the Town, it was only when the clause "except for prorated assessments on damaged buildings under RSA 76:21" was added to RSA 76:2 that abatements for changes to property that occurred after April 1 were allowed under RSA chapter 76. The Town cites Barksdale v. Town of Epsom, 136 N.H. 511 (1992), for the proposition that "this court has never affirmed an [RSA 76:16] abatement for anything other than disproportionate assessment or inability to pay." Barksdale, 136 N.H. at 515. However, as we also recognized in Barksdale, neither have we ever "explicitly limited the application of [RSA 76:16] to situations of disproportionate assessment and inability to pay." Id.

More importantly, as early as 1854, we held that the statutory predecessor to RSA 76:16 permitted a "good cause" abatement for inability to pay taxes that arose from "the loss of property subsequently to its assessment." Briggs' Petition, 29 N.H. 547, 550 (1854) (emphasis added). If the asserted "immutability" of the assessment after April 1 does not defeat good cause for an abatement based upon an inability to pay that arises after that date, then it should not defeat good cause for an abatement for destruction of property occurring after April 1. Certainly nothing in the text of the statute requires the conclusion that the former circumstance constitutes good cause, but the latter does not. The efficacy of such a conclusion is further undermined when it is remembered that tax abatement proceedings are equitable in nature, see Ansara v. City of Nashua, 118 N.H. 879, 880 (1978), and that RSA 76:16 should be "construed liberally, in advancement of the rule of remedial justice which it lays down," GGP Steeplegate v. City of Concord, 150 N.H. 683, 686 (2004).

The Town next contends that RSA 76:21, VI only "preserves" the existing authority of assessing officials to abate taxes for "good cause" under RSA 76:16 and that "good cause" encompasses only claims for inability to pay or disproportionate assessment. The Town argues that this has always been the case and that fire-related building loss has "never provided a basis for abatement for good cause under 76:16." To support its argument, the Town

4

once again relies upon our decisions in <u>Barksdale</u> and <u>Briggs</u>. As discussed above, however, neither of those cases supports the Town's position.

Although good cause under RSA 76:16 is not "boundless," <u>Barksdale</u>, 136 N.H. at 515, neither is it strictly confined to financial inability or disproportionality. In <u>Briggs</u>, we concluded that selectmen have broad power to provide abatements, stating that "[i]f justice requires an abatement, that would be good cause for the selectmen to [abate the property tax]." <u>Id</u>. at 551. We noted that "[i]llegality and irregularity are by no means the only causes for which justice requires that taxes should be abated," and "[o]ther misfortunes must furnish equally good cause for abatement." <u>Id</u>. at 551-52, 553. Therefore, <u>Briggs</u> stands for more than its conclusion that "poverty and inability to pay are good cause for the selectmen to abate taxes"; it provides selectmen a liberal tax abatement framework to promote equitable resolutions. <u>See id</u>. at 551-54.

Past practice also undermines the Town's argument. The Town does not dispute that some municipalities have granted "good cause" abatements for properties affected by post-April 1 fire-related building loss. Indeed, the Town granted "good cause" abatement requests for fire-related building loss under RSA 76:16 prior to the enactment of RSA 76:21. Although the Town now claims that its own board of selectmen's previous decisions are "not evidence of [RSA 76:16's] proper application," we have recognized that the long-standing practices of officials charged with the administration of a statute without legislative interference, while not dispositive, is a relevant factor to be considered in interpreting the statute. <u>See</u> <u>Appeal of Milton School District</u>, 137 N.H. 240, 246 (1993). Consequently, we hold that fire-related building loss occurring after April 1 may constitute "good cause" under RSA 76:16.

The Town next argues that, because RSA 76:21 specifically governs tax relief for fire-related building loss, RSA 76:16 does not provide an alternative source of relief for such loss. It also asserts that the petitioners' expansive interpretation of RSA 76:16 renders RSA 76:21 superfluous and textually "meaningless." This interpretation, the Town contends, is also inconsistent with the legislative history of RSA 76:21.

"When interpreting two statutes that deal with a similar subject matter, we construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statutes." <u>Grand China, Inc. v. United Nat'l Ins. Co.</u>, 156 N.H. 429, 431 (2007). To determine whether RSA 76:21 precludes the application of RSA 76:16 for fire-related building loss, we first look to the plain language of RSA 76:21. <u>See</u> <u>Henderson Holdings</u>, 164 N.H. at 38. In so doing, we acknowledge that RSA 76:21 plainly applies to the petitioners' situation and that, were it not for the petitioners' failure to comply with the sixty-day time limit imposed by section III of the statute, they would have been entitled to a proration thereunder by virtue of the destruction of the home on their property. We also acknowledge

5

that, if RSA 76:21 is not interpreted to provide the sole remedy for post-April 1 fire-related losses to the exclusion of RSA 76:16, there will exist substantial overlap between the two statutes in these types of cases.

Interpreting RSA 76:21 to create an exclusive remedy, however, would conflict with section VI of the statute, which states that "nothing in this section shall limit the ability of the assessing officials to abate taxes for good cause shown pursuant to RSA 76:16." RSA 76:21, VI. Thus, as the trial court recognized, adopting the Town's interpretation of RSA 76:21 would foreclose the relief provided under RSA 76:16, and render RSA 76:21, VI meaningless. See State v. Duran, 158 N.H. 146,155 (2008) ("[A]n interpretation that renders statutory language superfluous and irrelevant is not a proper interpretation."). We cannot agree with the Town's suggestion that the purpose of including paragraph VI in RSA 76:21 was to make clear that the new remedy created under RSA 76:21 was not intended to preclude resort to RSA 76:16 for taxpayers who have grounds for abatement other than fire. If, as the Town urges, post-April 1 fire-related abatements were not viewed as a proper basis for RSA 76:16 abatements, there would have been no logical reason to include reference to that statute in RSA 76:21. The inclusion of section VI in RSA 76:21 makes sense only if the legislature did regard RSA 76:16 as a proper remedy for fire-related abatements, and the text of section VI plainly reflects the legislature's intent that RSA 76:21 was not to displace RSA 76:16.

Thus, we agree with the trial court's observation regarding the interplay between the two statutes: RSA 76:16 does not confine the petitioners to a sixty-day window following the destruction of their property and provides a more expansive means of procuring relief, while RSA 76:21 offers a streamlined recovery process and a mandatory prorated calculation.

For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of the petitioners.[3]

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.

---

[3] Our conclusion also resolves the Town's final two arguments. Given that RSA 76:16 provides a supplemental source of relief, there is no conflict between it and RSA 76:21. Accordingly, the trial court's order could not violate the preemption doctrine. Nor did it act in "derogation" of the law by considering equitable principles. Cf. Hedges v. Dixon County, 150 U.S. 182, 192 (1893) (stating that "equity has no power to change or unsettle [the] rights" that are "clearly defined and established by law" (quotation omitted)).